# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

## CASE NUMBER: 15-60095-CR-BLOOM

**UNITED STATES OF AMERICA**

**Plaintiff,**

**v.**
**JANNIS LEBELLOT**

**Defendant.**

**--------------------------/**

## Motion for Downward Departure/Variance based on the Interests of Justice

Comes now, the Defendant, JANNIS LEBELLOT, and hereby respectfully moves for a downward departure and/or a variance from the United States Sentencing Guidelines ("Guidelines" or "USSG"). The request for a departure and/or variance is based on the following mitigating factors:

1. The defendant has demonstrated extraordinary community service and rehabilitation;
2. The defendant's unlawful conduct was aberrant behavior;
3. The proposed Guidelines sentence computation substantially overstates the seriousness of the crime;
4. The defendant has provided immediate acceptance of responsibility; and,
5. The defendant has extraordinary family ties and obligations.
6. The defendant's freedom has apparently now been defined by her zip code.
7. Defendant's sentence should be less than Guidelines recommendation (24 to 30 months) in order to avoid disparate treatment in comparison to similarly situated defendants;

    a. The criminal behavior she is being prosecuted for has been commercialized and legalized and taxed by the government in four different American states, to wit, Washington, Alaska, Colorado, and Oregon.

8. In unilaterally granting a two-level downward departure from the U.S. Sentencing guidelines to each of 22 defendants convicted in a marijuana distribution conspiracy, Judge James K. Bredar, a Maryland federal district court judge, stated two notable things which invite the court's attention:

    a. That the federal sentencing guidelines regarding marijuana have not changed since they were enacted in 1987, but since then "state marijuana laws have evolved significantly," and this "reflects a change in the way the citizens of over 25 states perceive the dangerousness of marijuana."

    b. That as a result of the same, the sentencing guidelines "were out of proportion to the goals of sentencing."

    c. If this court were to depart downward two more levels in this cause, the defendant would be eligible for home detention.

9. In making his ruling, Judge Bredar cited two notable memorandums of law of the Attorney General of the U.S., the Ogden Memo of 2009 and the Cole Memorandum of 2011, which dramatically altered the strategy and prioritization of federal marijuana enforcement policy in light of marijuana's accepted stature as a medical alternative to many diseases.

10. In September of 2015, a NY district court judge, Elizabeth A. Wolford, opined at a sentencing for a defendant, Joseph Tigano III, charged with a marijuana grow house, that the 20 year guidelines "were much greater than necessary," but "I do not have a choice." But because of our right to request a variance in the instant cause, this court does.

11. The tide of decriminalization is turning in many forums, as noted indirectly this month in a ruling by Judge Charles R. Breyer in the Ninth District.

12. The honorable judge looked at a Congressional act, which placed limits on the federal government's ability to inhibit the operation of a medical dispensary where that facility was compliant and in accord with its state's medical marijuana dispensation laws.

13. No such laws empower the defendant in this state, but the significant aspect of the court's ruling as it might apply herein is that the court

stopped the U.S. attorney from proceeding against said compliant dispensaries.

14. Because of the unjust disparity of laws in the United States, this defendant is going to face jail for conduct others similarly situated in other states can get licensed and open up retail stores.

15. This defendant does not even have a chance to be compliant, as her conduct is entirely criminal in Florida. But looking at the nature of it, this court can lean towards leniency and innovation in sentencing, not longevity and incarceration.

16. With legalization of marijuana taking hold in many states, Wall Street and hedge fund investors have jumped in to commercially producing and distributing marijuana with massive enterprises that dwarf the defendant's conduct.

17. For example, while Ms. Lebellot may have had a $100,000 worth of pot, Privateer Holdings in Silicon Valley has just raised $82 million in cash as start up capital to create technologically advanced grow houses in the Northwest.

18. That is mild compared to the pronouncement by tech millionaire Jamen Shivley, who announced in 2013 plans to build a national chain of pot shops based on the Starbucks model, which would, in his words, "mint more millionaires than Starbucks." His quote is featured in this week's New York magazine.

19. Respectfully, legal marijuana is the fastest growing industry in the United States of America, with 74% growth last year alone.

20. In fact, the ArcView Group, another Silicon Valley investment firm, last year generated $2.7 billion dollars in sales, and generated more than $200 million in tax revenues to the legal states.

21. In Colorado alone, the revenue was $88 million in taxes- double that of alcohol.

22. In conclusion, the undersigned respectfully acknowledges the facts articulated above are not those typically raised in a 'motion for variance.' But they need to be shared with courts and jurists in the Southern District because our legal community needs to see the shocking disparity between the Florida reality and the emerging trends in American society and the legal jurisprudence evolving therefrom.

23. It is not judicial activism to sentence someone in accord with the new America quickly unfolding. It is judicial catching up with the rest of the country.

24. The President has already this year released people in jail serving too long and too many years for drug crimes. Let's save the prisons for

the violent offenders who threaten our freedom, not the ones who are at the forefront of a new generation of Americans growing marijuana as a commercial business enterprise from coast to coast.

25. The district court's discretion in sentencing is further reinforced under a variety of statutory provisions focused on limiting the term of imprisonment imposed and effecting the parsimony provision of § 3553. Under 18 U.S.C. § 3582(a), imposition of a term of imprisonment is subject to both the understanding and restriction that incarceration "is *not* an appropriate means of promoting correction and rehabilitation."

26. Additionally, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

27. If this court seized the opportunity for downward departure in the instant case, this defendant could serve her sentence on probation or home detention, supported by a network of friends and family members, permitting her to be with loved ones, and continue to treat and care for the abused animals she has made her life's work.

28. This type of judicial relief, combined with the continuing mental health counseling that she needs and will never get in prison, would serve a societal good far greater than any prison sentence might be worth.

WHEREFORE, pursuant to the stipulation afforded the defendants that we may submit a motion for a variance, the undersigned respectfully submits the foregoing, in the interests of justice, to this court.

**Norman Elliott Kent**

12 SE 7th Street Suite 709
Fort Lauderdale, FL 33301
Phone: 954-763-1900  Fax: 954-763-4792
Email: norm@normkent.com

By /s/ Norman Elliott Kent

Norman Elliott Kent
Florida Bar Number 271969